UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RANDALL M. SCHAFFER            CIVIL ACTION

VERSUS                               NO: 13-6607

C. BARRY OGDEN, ET AL.           SECTION: "A" (4)

## ORDER AND REASONS

The following motions are before the Court: **Motion to Dismiss Pursuant to Rule 12(b)(6) (Rec. Doc. 27)** filed by defendant Arthur Hickham; **Motion to Dismiss Pursuant to Rule 12(b)(6), or in the Alternative for a More Definite Statement (Rec. Doc. 28)** filed by defendant Brian Begue; **Motion to Dismiss Pursuant to Rule 12(b)(6) and Motion for Award of Costs (Rec. Doc. 29)** filed by defendants H.O. Blackwood, Dennis Donald, Conrad McVea, and C. Barry Ogden. Plaintiff Randall Schaffer has failed to file any opposition to these motions. The motions, scheduled for submission on August 13, 2014, are before the Court on the briefs without oral argument.

## I.     Background

Before entering into private practice in oral and maxillofacial surgery, plaintiff Randall M. Schaffer, DDS, served as a resident under Dr. John Norman Kent at the Louisiana State University Dental and Medical Center. (Rec. Doc. 26, Amended Comp. ¶ 11). Schaffer claims that during this residency he learned of a defect in an oral prosthesis in which Dr. Kent had a proprietary interest. (*Id.* ¶ 12). In addition to allegedly being threatened with dismissal by Kent when raising the issue and attempting to remedy the individual results of this defect in his subsequent private practice, Schaffer also came forward as a witness and consultant in related medical malpractice cases. (*Id.* ¶ 13-15). It is

1

the last of these actions that Schaffer claims to have resulted in the Board's eventual revocation of his license, the violations of his rights by the several individuals named in his suit, and the commencement of the present litigation. (*Id.* ¶ 15-16).

   While some of the facts applying to particular individuals will be examined below in the discussion, the themes of Schaffer's Amended Complaint against those defendants are universal. Allegedly acting on the impetus of protecting Kent, Louisiana State University, and the Patient's Compensation Fund, individuals affiliated with the Louisiana Board of Dentistry--panel members Drs. McVea, Donald, and Blackwood; executive director of the Board, Barry Ogden; private investigator for the Board, Camp Morrison and his firm Camp Morrison Investigations, LLC; counsel for the Board, Brian Begue; and administrative law judge and counsel for the Board, Arthur Hickham--carried out an investigation and hearing that violated Schaffer's due process and equal protection rights. The Board revoked Schaffer's license in September of 2000, but Schaffer contests that the violations are ongoing as the conditions of his license revocation allow him to request review and reinstatement–his three attempts at which (2004, 2007, and 2012) have been denied. More specifically, Schaffer claims that many of these individuals conspired to strip him of his license and have sworn to never let him regain his license by slanderously and falsely accusing him, participating in his case in the face of conflicts of interest, and determining the merits of his case prior to hearings. Schaffer points to the exclusion of certain witnesses and other offered evidence as substantiation of these allegations and notes in some cases a contractual arrangement with the Board as showing a conflict of interest of those involved in the hearings. Schaffer also claims that one of the Board members, McVea, did not afford him a fair hearing due to a religiously-motivated bias, affecting the 2004 and 2007 reinstatement hearings.

Schaffer filed this lawsuit against Brian Begue, Camp Morrison, Camp Morrison Investigations, LLC, C. Barry Ogden, Conrad McVea, Dennis Donald, Herman O. Blackwood, and Arthur Hickham alleging claims for violation of his Fourteenth Amendment due process and equal protection rights brought via 42 U.S.C. 1983, conspiracy to violate those rights, violations of the Sherman Antitrust Act under 15 U.S.C. 1 and 2, and a state law claim for defamation.[1] Plaintiff appears to name all defendants in their individual capacity, as well as naming C. Barry Ogden in his official capacity, and seeks both damages and injunctive relief relating to the reinstatement of his license.

Schaffer argues that Arthur Hickham joined in the conspiracy to deprive Schaffer of his license and acted accordingly "as administrative law judge and attorney for the [Board]" (independent counsel for the Board) by barring the introduction of evidence, witnesses, and documentation that would have allowed for Schaffer's maintenance or reinstatement of his license. Schaffer furthermore alleges that Hickham took on the role of both administrative judge and prosecuting attorney.

Schaffer contests that Begue joined in the conspiracy to deprive Schaffer of his license in Begue's role as general counsel by continuing to participate in the case on the Board's behalf after being instructed to not do so by the Louisiana Supreme Court and by continuing to make plans "to prevent [Schaffer's] re-licensure" with the other defendants named in this suit. Schaffer also accuses Begue of permitting McVea "to enter upon a slanderous anti-Semitic tirade" and also of slandering Schaffer himself.

As to the Board members, including the executive director, C. Barry Ogden, Schaffer alleges that they have never given him and, will never give him, a fair hearing as the result

---

[1]The Court liberally construes a *pro se* plaintiff's pleading. *See Cooper v. Sheriff of Lubbock Cnty.*, 929 F.2d 1078, 1081 (5th Cir. 1991).

has always been predetermined due to their alleged conspiracy. He claims that they have continued to slander him at the related hearings. Relatedly, Schaffer also accuses board member McVea of making anti-Semitic remarks and acting on religiously-motivated bias at hearings.

Plaintiff filed his initial Complaint on December 9, 2013. (Rec. Doc. 1). The Court issued an Order to show cause for failure to serve on March 20, 2014. (Rec. Doc. 3). Defendant Hickham filed the first motion to dismiss on March 26, 2014. (Rec. Doc. 4). Plaintiff did not file a timely opposition and instead only filed an out-of-time motion for extension of time to file an opposition. (Rec. Doc. 11). The Court granted this motion and reset the submission date on the motion to dismiss filed by Hickham. (Rec. Doc. 15). Defendant Begue also filed a motion to dismiss on May 8, 2014. (Rec. Doc. 19). Schaffer failed to file any opposition to either motion, yet in an abundance of caution, the Court again reset the submission date. (Rec. Doc. 21). Defendants Blackwood, Donald, McVea, and Ogden filed a motion to dismiss on June 19, 2014. (Rec. Doc. 22). Finally, on July 2, 2014, Schaffer sought leave to file an Amended Complaint, which the Court granted and in turn dismissed without prejudice the motions to dismiss. (Rec. Doc. 25).

All defendants who previously filed motions to dismiss refiled and reurged such motions on July 21, 22, and 24, 2014, respectively. (Rec. Docs. nos. 27-29). Plaintiff has filed no opposition or any other responses since that time. The Court now addresses these motions on the merits.[2] This matter has not yet been scheduled for trial.

## II.     Standard of Review

---

[2]Although Plaintiff has filed no opposition, the Court may not summarily grant the motions on that basis alone. *See, e.g., Webb v. Morella*, 457 F. App'x. 448, 452 n.4 (5th Cir. 2012) (explaining the impermissibility of dismissing a complaint for failure to oppose a motion to dismiss).

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (*citing Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (*quoting Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (*quoting Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (*quoting Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (*quoting Iqbal*, 129 S. Ct. at 1950).

## III.  Discussion

Below the Court will discuss in turn those claims brought against the movants via § 1983, the Sherman Act, and state law defamation. The Court will conclude with a summary of its holdings.

### a. Section 1983

Schaffer brings claims against the movants in their individual (and official, as to C. Barry Ogden) capacities via § 1983. These claims relate to the manner in which the individually-named movants carried out their roles regarding the hearings on the revocation of Schaffer's license and his ongoing attempts to have it reinstated. For example, the claims against Hickham address the decisions he made in the hearings in his roles as counsel and administrative judge, as well as his underlying motivations for making those decisions. The same applies to Schaffer's accusations against the panel members, McVea, Donald, and Blackwood, and the executive director, C. Barry Ogden, for their conduct in the hearings.[3] Due to the nature of these claims, the movants have all raised the defense of absolute immunity, among others. Movants assert that they are entitled to absolute immunity as the claims relate to their actions undertaken in performance of their quasi-judicial or quasi-prosecutorial functions. In support of this contention, they cite *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997).

Absolute immunity, which may be asserted as a defense to those actions brought via § 1983, "denies a person whose federal rights have been violated by a government official from obtaining any type of remedy, regardless of the conduct." *Beck v. Texas State Board of Dental Examiners*, 204 F.3d 629, 634 ( 5th Cir. 2000) (citing *Forrester v. White*, 484 U.S. 219, 224 (1988)). This immunity extends not only to judges and prosecutors, but also to those in administrative agencies acting in quasi-judicial or quasi-prosecutorial functions. *Id.*

---

[3]As to Begue, it is not entirely clear from the pleadings what his role was. However, assuming that Begue maintained some semblance of involvement, Plaintiff has failed to state a claim against him. If indeed he has continued to participate in contravention of a Louisiana Supreme Court order to not do so, that would present either a disciplinary issue to be pursued in the state court system or a procedural defect attributable to the panel members in allowing him to continue to participate. However, to the extent this is attributable to the error of the panel members, that claim would be subject to the defense of absolute immunity.

at 634 (citing *Butz v. Economou*, 438 U.S. 478, 512-13 (1978)). It immunizes individuals

acting in such a function both from actions for damages as well as those for injunctive relief.

*See, e.g.*, *Simpson v. Clement*, no. 14-1040, 2014 WL 4084985 (E.D. La. Aug. 14, 2014)

(noting that the Federal Courts Improvement Act of 1996 removed the availability of

injunctive relief in the face of absolute immunity).

The Fifth Circuit applied the *Butz* functional test for absolute immunity in *O'Neal v.*

*Mississippi Bd. of Nursing*, 113 F.3d 62 (5th Cir. 1997), when examining claims brought via §

1983 against the executive director and board members of the Mississippi State Board of

Nursing. It began by setting out the steps to determine absolute immunity as follows: (1) the

need to assure that the individual can perform his functions without harassment or

intimidation; (2) the presence of safeguards that reduce the need for private damages

actions as a means of controlling unconstitutional conduct; (3) insulation from political

influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6)

the correctability of error on appeal. *O'Neal*, 113 F.3d at 65 (citing *Cleaving v. Saxner*, 474

U.S. 193, 202 (1985); *Butz*, 438 U.S. at 512). That court then applied those steps in the case

before it by examining the statutes and regulations governing the structure and the

procedures of the Board of Nursing and concluded by finding that its members and

executive director were entitled to absolute immunity. *O'Neal*, 113 F.3d at 67. This Court will

now do the same.

First, under its grant of authority, the Board may choose to "revoke, limit, or suspend

a license" and impose fines or other sanctions. La. R.S. 37 § 760 (A)(4)(a-b). Performance of

such functions requires freedom from the threat of personal "harassment or intimidation."

*Beck*, 204 F.3d at636 (finding the first requirement satisfied on this basis); *O'Neal*, 113 F.3d

at 66 (same). Here, the claims in the Amended Complaint arise out of the movants' very

exercise of those functions, making the need for such assurance immediately apparent. Second, a number of procedural safeguards in the administrative actions reduce the need for separate remedies. These include notice of the hearing and the corresponding charges, the right to counsel at that hearing, the right to produce witnesses and evidence under oath, and the right to cross-examine any adverse witnesses. La. R.S. 37 § 770 (A)(1); *Beck*, 204 F.3d at 635-36 (finding the second requirement satisfied on this basis); *O'Neal*, 113 F.3d at 66 (same). In addition, Schaffer's Amended Complaint makes clear that the Board granted additional hearings upon his request in 2004, 2007, and 2012 to consider reinstatement. Third, the members of the Board are appointed by the Governor and approved by the state Senate. La. R.S. 37 § 753 (C), (D). The statutory provisions limit the members to a maximum of two consecutive, five-year terms. *Id.* at § 753 (E). These provisions serve to shield the members from political influence and the pressure to find in favor of a certain party. *Beck*, 204 F.3d at 636 (finding the third requirement satisfied on this basis); *O'Neal*, 113 F.3d at 66. Fourth, although the role of precedent is not clear in the relevant statutes, the Fifth Circuit's precedent is clear that this factor is nonetheless not dispositive where the statutory requirements fulfill the other factors. *Beck*, 204 F.3d at 636; *O'Neal*, 113 F.3d at 66 (same). Fifth, as stated above, the ability of an aggrieved party to retain counsel, present evidence, and cross-examine witnesses attests to the adversarial nature of the proceedings. *Beck*, 204 F.3d 636 (finding the fifth requirement satisfied on this basis); *O'Neal*, 113 F.3d at 66 (same). Finally, an aggrieved party has the right to "resort to the civil district court for the parish of Orleans for judicial review" following "a decision in an administrative adjudication." La. R.S. 37 § 786 (A)(1); *Beck*, 204 F.3d at 636 (finding the final requirement satisfied on this basis); *O'Neal*, 113 F.3d at 66 (same).

The Court concludes that, in applying these factors to the present case, the movants

were acting in their quasi-judicial or quasi-prosecutorial functions during the alleged actions giving rise to the claims against them and as such are entitled to absolute immunity. Schaffer's charge that the individuals had conspired to reach a certain result by means of the alleged violations even outside of a hearing itself does not alter this conclusion. *See Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985) ("[W]here a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity."). Furthermore, to the extent that Schaffer alleges that movants violated his free exercise rights based on anti-Semitic motivations, the Court again notes that absolute immunity encompasses these functions regardless of motive. *See Cleavinger v. Sallinger*, 474 U.S. 193, 200-01 (1985). Thus, the motions to dismiss brought by all movants, Rec. Docs. 27, 28, and 29 are **GRANTED** as to the claims brought via § 1983. Those claims are **DISMISSED WITH PREJUDICE**.

### b. Sherman Act

Schaffer also notes in his Amended Complaint that these actions are brought pursuant to 15 U.S.C. § 1 and § 2, which protect against antitrust activities. Although the Amended Complaint does not make it clear, the Court presumes that the alleged violation is the Board acting "to protect Dr. Kent, the Louisiana State University, and the Louisiana Patient Compensation Fund from what has been estimated at [one billion] dollars of liability" by revoking Schaffer's license. (Rec. Doc. 26, Comp. ¶ 16).

Under 15 U.S.C. § 1, a plaintiff must show that "(1) the defendants engaged in a conspiracy; (2) that restrained trade; (3) in the relevant market." *Golden Bride Tech., Inc. v. Motorla, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008) (citing *Apani Sw., Inc. v. Coca-Cola Enter., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002)). The Court must be able to find in the complaint

enough facts to state a plausible claim that the defendants agreed to undertake anticompetitive activities against which the Sherman Act was intended to protect. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-557 (2007); *Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007). Under 15 U.S.C. § 2, aimed at preventing monopolization, a plaintiff must establish "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

Schaffer has failed to state sufficient facts to make out a claim under either § 1 or § 2 of the Sherman Act. Schaffer effectively asks this Court to infer an agreement to engage in the restraint of trade in the dental field from his allegations that the board members and counsel met prior to the hearings regarding his license and that his due process rights were violated in those hearings. Even assuming that a cognizable injury under the Sherman Act has been pled, these bare and conclusory statements do not suffice to state such a claim. Schaffer also does not offer any specificity as to an intent on part of the Board to monopolize any part of the dental field. Thus, the motions to dismiss brought by all movants, Rec. Docs. 27, 28, and 29 are **GRANTED** as to the claims brought under 15 U.S.C. § 1 and § 2. Those claims are **DISMISSED WITH PREJUDICE**.

### c. Defamation

Giving the Amended Complaint a liberal construction, Schaffer also alleges a state-law claim of defamation against the defendants. Under Louisiana law, a claim of defamation has the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997). The law denotes statements as defamatory *per se* when the statements "accuse another of

criminal conduct, or which, by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances." *Costello v. Hardy*, 864 So.2d 129, 140 (La. 2004) (citations omitted). In such a case, the elements of falsity, fault, and injury are presumed but may be rebutted. *Id.* at 140. Finally, an employer may be liable for an employee's act of defamation if it was committed within the course and scope of his employment. *See Faust v. Greater Lakeside Corp.*, 797 So. 2d 748, 754 (La. App. 4 Cir. 2001) (citations omitted).

Schaffer sufficiently pleads a claim for defamation against C. Barry Ogden, executive director of the Board. Although the conclusory statements that the defendants have continued "a libelous and slander[ous] campaign against Dr. Schaffer" (Rec. Doc. 26, Amended Comp. at 7) fail to present a claim, Schaffer notes one instance with enough specificity to survive a motion to dismiss.

Schaffer claims that the investigator in this case, Camp Morrison Investigations, LLC, "informed Dr. Schaffer's witnesses that Dr. Schaffer has murdered patients and was currently in [the] Angola . . . State Penitentiary of Louisiana." (Rec. Doc. 26, Comp. at 6). Schaffer alleges that Camp Morrison Investigations, LLC has undertaken these defamatory actions pursuant to its employment as the Board's investigator and have continued to undertake such actions to the present.[4] *Id.*

This statement clearly fits the description of defamation *per se*. It accuses Schaffer of criminal conduct–conduct that would injure both his personal and professional reputation. By orally declaring this statement to potential witnesses, the investigator published it to a third party. Finally, the falsity, fault, and injury are presumed.

At this point, the Court assumes that C. Barry Ogden, as executive director of the

---

[4]Accordingly, the Court does not find that the claim is prescribed on its face.

Board, would be considered an employer of the Board's investigator. As Schaffer has alleged that the investigator defamed him while carrying out services for the Board—interviewing potential witnesses—the Court finds that Schaffer has sufficiently pled a cause of action for defamation attributable to defendant C. Barry Ogden via a theory of vicarious liability. Thus, the motions to dismiss on the state law claim of defamation are **GRANTED IN PART and DENIED IN PART**. The motions to dismiss filed by defendants Arthur Hickham and Brian Begue, Rec. Docs. nos. 27 and 28, respectively, are **GRANTED** in their entirety as to the state law defamation claims. The third motion to dismiss, Rec. Doc. 29, is **GRANTED** as to defendants Conrad McVea, Dennis Donald, and Herman Blackwood on the state law defamation claim. Such claims are **DISMISSED WITH PREJUDICE**. It is **DENIED** as to C. Barry Ogden on the state law defamation claim.

### d. Request for Costs by defendants Ogden, McVea, Donald, and Blackwood

The Court has considered the request for costs made by defendants Ogden, McVea, Donald, and Blackwood. (Rec. Doc. 29-1, at 18). While such a request should normally be granted to the prevailing party, the trial court may deny awarding costs if it finds that the claimant has acted in good faith and one of the five following factors are present: "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006).

Given the present lack of information available in the record to weigh these factors and the partial denial of the corresponding motion to dismiss, the Court **DENIES WITHOUT PREJUDICE** the request for costs at this time. Defendants may reurge such a

request at a later time should these proceedings reach an appropriate stage at which to do so.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss filed by defendant Arthur Hickham, Rec. Doc. 27**, is **GRANTED** in its entirety. All claims against defendant Hickham are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss filed by defendant Brian Begue, Rec. Doc. 28**, is **GRANTED** in its entirety. All claims against defendant Begue are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss filed by defendants C. Barry Ogden, Conrad McVea, Dennis Donald, and Herman Blackwood, Rec. Doc. 29**, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to all federal claims as to all of the movants. It is **GRANTED** as to the state law defamation claims against Conrad McVea, Dennis Donald, and Herman Blackwood. It is **DENIED** as to the state law defamation claim against C. Barry Ogden. The request for costs is **DENIED WITHOUT PREJUDICE**. All other claims are **DISMISSED WITH PREJUDICE.**

November 7, 2014

JAY C. ZAINEY

UNITED STATES DISTRICT JUDGE

13